**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MSHB RESTAURANT, LLC, § | | |
| *Plaintiff,* § | | |
| § | | |
| vs. § | Case No. 4:24-cv-1973 | |
| § | | |
| NEPAL BUSINESS INVESTMENT, § | | |
| LLC, BINOD PANTHI, and HEM § | | |
| TIWARI, § | | |
| *Defendants.* § | | |

# ORDER

This is a misappropriation of trade secrets and breach of settlement agreement case over Defendants' unauthorized use of Plaintiff's recipes. Before the Court is Plaintiff's motion for leave to file its second amended complaint, ECF No. 28, and Defendants' motion to dismiss Plaintiff's first amended complaint, ECF No. 9, on the basis of limitations and release, ECF No. 15. The Court finds Plaintiff should be granted leave to amend, and Defendant's motion should be denied as moot.

## I. BACKGROUND

In 2016, Plaintiff was formed to operate a restaurant, Noon Mirch/Cuisine of India. ECF No. 9 ¶ 7. Defendants Panthi and Tiwari ("individual Defendants") were employees of Plaintiff from 2016 to September 2020. *Id.* ¶¶ 8-9. While the individual Defendants were still Plaintiff's employees, SHB Investment LLC ("SHB") (now

Defendant Nepal Business Investment ("Defendant" or "NBI")) was incorporated "with original members Panthi [and] Tiwari" and began setting up Himalayan Taj & Indian Cuisine. *Id.* ¶¶ 11-12, 14. Over the course of its existence, MSHB created over one hundred recipes (the "Recipes") to which Panthi and Tiwari had access while employed. *Id.* ¶¶ 15-16. The Recipes were known only to MSHB's employees because MSHB limited access to the Recipes on a need-to-know basis. *Id.* ¶ 17. The Recipes were "researched, developed, and formalized by MSHB over many years," and "MSHB spent significant time and money researching…its unique Recipes…which resulted in customer loyalty, recognition, and financial success." *Id.* ¶¶ 19-20.

In three 2021 lawsuits ("the Lawsuits") MSHB filed against Panthi and Tiwari for trade secret theft,[1] MSHB's expert determined that many recipes the individual Defendants at NBI used were the same as or highly similar to MSHB's Recipes. *Id.* ¶¶ 26-27. The litigation was settled prior to a court ruling on the trade secret theft allegations pursuant to a "Settlement Agreement." *Id.* ¶ 28. NBI was also included in the Settlement Agreement. *Id.*

The Settlement Agreement

> releases…and forever discharges the Defendants and [NBI]…of and from all claims…including but not limited to those as alleged and set

---

[1] The three lawsuits were consolidated into one suit and are defined in the Settlement Agreement as the "Lawsuits." ECF No. 9-4 at 2.

> forth in the pleadings or could have been asserted in the Lawsuits or any other possible or conceivable assertion or right against Defendants and [NBI] of every type and kind, known or unknown, that were or could have been brought by MSHB against Defendants and [NBI] in the Lawsuits, *excepting causes of actions related to the performance of the obligations of the Parties pursuant to this Settlement Agreement*. This release is intended by MSHB to be as broad, pervasive, and general as allowed by law.

ECF No. 9-4 at 4 (emphasis added). The Agreement further states, "It is expressly understood that…*nothing in this Settlement Agreement is to be construed as a license or permission to use MSHB's trade secrets or recipes*." *Id.* at 6 ¶ 4.C. (emphasis added).

After the effective date of the Settlement Agreement, Plaintiff alleged that Defendants' restaurant continued to serve food similar to that found on MSHB's menu to the point that it was confusing to customers. ECF Nos. 9 ¶¶ 30-32. This use of Plaintiff's recipes after the effective date of the Settlement Agreement is the basis of Plaintiff's breach of contract and misappropriation claims.

## II.    RULE 15(a) LEAVE SHALL BE FREELY GRANTED.

When a motion for leave to amend is filed before the scheduling order deadline, Rule 15(a) of the Federal Rules of Civil Procedure governs. *Pugh v. Golden Rule Ins. Co.*, No. 3:09-CV-0372-D, 2009 WL 10704786, at *1 (N.D. Tex. Oct. 14, 2009) (internal citation omitted). The Court should freely grant leave to amend when "justice so requires." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, __ (5th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).

In its first amended complaint, Plaintiff alleges claims for misappropriation[2] and breach of contract. ECF No. 9 at 6-12. Plaintiff seeks leave to amend to add a fraudulent concealment claim. ECF No. 28. Here, the deadline to file amended pleadings, November 30, 2024, has not yet passed, and the case is in early stages of discovery.[3] Given there is little to no prejudice to Defendants, leave to amend should be freely given. *Pugh*, 2009 WL 10704786, at *1.

However, Defendants' motion to dismiss argued that Plaintiff's misappropriation claims under the Defend Trade Secrets Act (DTSA) and Texas Uniform Trade Secrets Act (TUTSA) are time-barred, and that, in any event, the Settlement Agreement released all misappropriation-related claims, past and future, against Defendants. ECF No. 15 at 4-7. The Court will address both assertions in deciding whether leave should be granted.

---

[2] "To prevail on a misappropriation of trade secrets claim, a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff." *M-I L.L.C. v. Q'Max Sols., Inc.*, Civ. Action No. H-18-1099, 2019 WL 3565104, at *3 (S.D. Tex. Aug. 6, 2019) (citing *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018) (internal quotation marks omitted)). Trade secrets include any information that "derives independent economic value, actual or potential, from not being generally known," and which the owner "has taken reasonable measures under the circumstances to keep [ ] secret." *Pittsburgh Logistics Sys., Inc. v. Barricks*, No. 4:20-CV-04282, 2022 WL 2353334, at *6 (S.D. Tex. June 30, 2022) (first citing TEX. CIV. PRAC. & REM. CODE § 134A.002(6); then citing 18 U.S.C. § 1839(3)). Whether a trade secret exists is generally a question of fact. *Id.* (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)). Therefore, a recipe can be a trade secret.

[3] Plaintiff filed a motion for protective order regarding protection of its recipes and/or trade secrets on November 7, 2024. ECF No. 25.

### A. No Continuing Misappropriation Alleged.

Defendants asserted that the suit is time-barred because of the three-year[4] limitations period under the DTSA and TUTSA, and the doctrine of continuing misappropriation.[5] *Id.* at 4-6. According to Defendants, because Plaintiff discovered misappropriation in January 2021 (as indicated by Plaintiff's "Cease and Desist" letter at that time) and filed its claims in May 2024—more than three years after the initial discovery—those claims are barred. *Id.* at 3-5. The doctrine of continuing misappropriation, they argued, prevented any misappropriation claims arising after the three-year period, including any after the effective date of the Settlement Agreement. *Id.* at 5-6.

Defendants' argument that the DTSA and TUTSA claims are time-barred is unavailing. While this district recognizes the doctrine of continuing misappropriation,[6] there is no such continuing misappropriation alleged here. The

---

[4] A plaintiff is required to "bring his misappropriation claim within three years 'after the date on which the misappropriation…is discovered or by the exercise of reasonable diligence should have been discovered.'" *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-cv-147-SDJ, 2024 WL 1932418, at *7 (E.D. Tex. May 2, 2024) (first quoting 18 U.S.C. § 1836(d) (DTSA); then citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.010(a) (TUTSA)).

[5] "A continuing misappropriation does not restart the limitations period." *Trench Tech Int'l, Inc. v. Tech Con Trenching, Inc.*, No. 4:19-cv-00201-O, 2022 WL 1998466, at *3 (N.D. Tex. June 6, 2022) (citing both the DTSA and TUTSA).

[6] *Abaco Drilling Techs., Inc. v. PV Fluid Prods.*, Civ. Action No. H-20-1946, 2020 WL 10501993, at *2 (S.D. Tex. Aug. 3, 2020) (citing both the DTSA and UTSA) ("For both statutes of limitations, a continuing misappropriation is treated as a single claim of misappropriation").

misappropriation that allegedly occurred before the Lawsuits[7] were filed is the subject of the Settlement Agreement. ECF 9-4 at 4 ¶ 3.C. Claims based on those acts were released.[8] *Id.* Plaintiff is suing on a misappropriation occurring *after* the misappropriations at issue in the previous Lawsuits that were settled in 2023. ECF No. 9 ¶¶ 46, 57, 64. There can be no continuing misappropriation of settled misappropriation claims, especially where the Defendants denied using any of the recipes or trade secrets. *UltraClean Electropolish, Inc. v. Astro Pak Corp.*, No. H-14-3635, 2015 WL 2448499, at *2 (S.D. Tex. May 20, 2015).

*UltraClean* illustrates this point. In that case, "[Defendant] argues that UltraClean's allegations of trade secret misappropriation in the 2007 Lawsuit indicate that UltraClean discovered the continuing misappropriation they now allege prior to 2007, and the claim accrued at that time. If the current misappropriation claim accrued in 2007, then it was released by the 2009 Settlement Agreement. However, Astro Pak denied misappropriating UltraClean's trade secrets in 2007, and there was never a finding by a court or conclusive proof of such misappropriation. *A claim for misappropriation starting in 2013 could not have been brought in the*

---

[7] The Settlement Agreement defines "Lawsuits" as the lawsuits that Nanda, MSHB, and Lumbini filed in 2021 in, or otherwise transferred to, Harris County. ECF Nos. 9 ¶ 26; 9-4 at 2.

[8] "MSHB…releases…claims…that could have been asserted in the Lawsuits or any other…right against Defendants and Nepal…that were or could have been brought by MSHB against Defendants and Nepal in the Lawsuits…"

*2007 Lawsuit, and would not have been released by the 2009 Settlement Agreement.*" *UltraClean*, 2015 WL 2448499, at *2 (emphasis added).

In the 2021 Lawsuits, Plaintiff alleged misappropriation between 2016 and 2020. Here, similar to the facts in *UltraClean*, the Settlement Agreement states: "It is expressly understood that Panthi and Tiwari and Nepal have denied using any of MSHB's or Nanda's trade secrets or recipes…" ECF No. 9-4. Likewise, as in *UltraClean*, Plaintiff alleges that the "Litigation was settled between MSHB, Panthi, and Tiwari individually prior to a bench trial and a court ruling on the trade secret theft allegations…." ECF No. 9. Therefore, based on the allegations in the complaint, Plaintiff's claim in this suit for misappropriations occurring after the June 26, 2023 settlement date could not have been brought in the 2021 Lawsuit, and would not have been released by the 2023 Settlement Agreement. *UltraClean*, 2015 WL 2448499, at *2. As alleged, the misappropriation claims are based on actions that occurred after the Settlement Agreement and are not time-barred.

### B. Future Claims Were Not Released.

Regarding the Settlement Agreement, Defendants argued that the broad release in the agreement meant that Plaintiff had released past *and* future claims against it. ECF No. 15 at 7. This argument is without merit as it is contrary to the express language in the Agreement. *See Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("The goal of contract interpretation is to ascertain the parties'

true intent as expressed by the plain language they used.").

The release states that it pertains to claims that "could have been asserted in the Lawsuits" and "except[s] causes of actions related to the performance of the obligations of the Parties pursuant to this Settlement Agreement." ECF No. 9-4 at 4. It further provides that "nothing in the Settlement Agreement is to be construed as a license or permission to use MSHB's trade secrets." *Id.* at 6 ¶ 4.C. Thus, despite the broad release language, Plaintiff made clear that enforcement of the Settlement Agreement was not released, and Defendants had no permission to use the recipes. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 497, 504 (2d Cir. 2014) (noting that suit over new trademark violations after settlement was not precluded because the Settlement Agreement, despite "broad and unqualified" release, "makes clear that it is not a license for Defendant to use Plaintiff's intellectual property in the future").[9] Accordingly, Defendants' argument that these claims were released is contrary to the express language of the release and the allegations in Plaintiff's amended complaint.

## III. CONCLUSION

The Court **GRANTS** Plaintiff's motion for leave to amend. ECF No. 28.

---

[9] Moreover, Plaintiff's breach of contract claim based on the unauthorized use of Plaintiff's recipes in violation of the Settlement Agreement falls under the four-year statute of limitations for breach of contract actions. The claim accrues when the contract is breached. TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2015). Accordingly, based on these allegations, the breach of contract claims are not time barred.

Accordingly, the Court **DENIES** Defendants' motion to dismiss, ECF No. 15, as **MOOT**.[10]

    **IT IS SO ORDERED.**

Signed on November 14, 2024, at Houston, Texas.

                                                   */s/ Dena Palermo*
                                           **Dena Hanovice Palermo**
                                           **United States Magistrate Judge**

---

[10] After the second amended complaint is filed, Defendants are permitted to file either another motion to dismiss or a motion for summary judgment. *Quintillion Subsea Operations, LLC v. Maritech Project Servs., Ltd.*, No. 4:20-cv-2310, 2023 WL 138862, at *4 (S.D. Tex. Jan. 9, 2023), *adopted,* No. 4:29-cv-2310, 2023 WL 375688 (S.D. Tex. Jan. 24, 2023) (citing Judge Lake's "one dispositive motion" policy and allowing defendants to raise their arguments in a renewed motion to dismiss or a motion for summary judgment).