United States District Court
Southern District of Texas
ENTERED
August 10, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MSHB Restaurant, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-01973 |
| | § | |
| Nepal Business Investment, LLC, | § | |
| Binod Panthi, and Hem Tiwari, | § | |
| | § | |
| *Defendants*. | § | |

# JUDGE PALERMO'S REPORT AND RECOMMENDATION AND ORDER[1]

This is a trade-secret case. ECF No. 1. Plaintiff MSHB Restaurant LLC ("MSHB") moves for partial summary judgment against Defendants Nepal Business Investment LLC ("NBI"), Binod Panthi, and Hem Tiwari (collectively, "Defendants") on its claims for trade-secret misappropriation and breach of contract, and with respect to Defendants' affirmative defenses. ECF No. 122.[2] In turn, Defendants cross-move for summary judgment on all claims. ECF No. 128.[3] MSHB also moves to strike Kaiser Lashkari's expert report, ECF No. 130, and partially strike Bruce Perkin's expert report and exclude portions of his testimony, ECF No. 131.

[1] The district judge to whom this case is assigned referred all pretrial proceedings to this Court pursuant to 28 U.S.C. § 636(b)(1). Orders, ECF Nos. 13, 93.

[2] Defendants filed a response, ECF No. 129, and MSHB filed a reply, ECF No. 133.

[3] MSHB filed a response, ECF No. 132, and Defendants filed a reply, ECF No. 134.

Having considered the parties' briefing, the summary judgment record, and the applicable law, the Court **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** and MSHB's motion for partial summary judgment be **DENIED**. Because the Court finds summary judgment appropriate, the Court need not reach MSHB's motions to strike and thus **DENIES** them as moot.

## I. BACKGROUND

This tale starts with a company called SRS Inc. ("SRS"). ECF No. 122 at 5. SRS owned and operated an Indian restaurant in Houston, Texas, called "Cuisine of India" from 2001 through 2017. *Id.* Defendants Tiwari and Panthi worked at Cuisine of India—Tiwari as a cook since 2003 and Panthi as a floor manager since 2010—until it closed. *Id.* at 5–6. In 2016, the SRS shareholders formed MSHB and opened a new restaurant named Noon Mirch/Cuisine of India ("Noon Mirch"). *Id.* at 5. As the name suggests, Noon Mirch sells Indian-style fare. ECF No. 128 at 4. Cuisine of India closed about a year later. ECF No. 122 at 5. Tiwari and Panthi moved to Noon Mirch to continue working as a cook and floor manager, respectively, and stayed there for about four more years. *Id.* at 6; ECF No. 128 at 4–5.

While still working for Noon Mirch, Tiwari and Panthi teamed up with Sudip Shrestha—another Noon Mirch cook—to form SHB Investment LLC and obtain a license for a new restaurant called Himalayan Taj & Indian Cuisine ("Himalayan Taj"). ECF No. 122 at 9. Shortly after that, they renamed SHB Investment LLC to

Nepal Business Investment LLC and added Dipesh Tamrakar—another Noon Mirch frond-end manager—as a director. *Id.* at 9–10. At the end of September 2020, Tiwari and Panthi resigned from Noon Mirch, opened Himalayan Taj, and began selling Indian-style food. *Id.*; ECF No. 128 at 4–5.

Cue the litigation. In 2021, MSHB sued Tiwari and Panthi for, among other things, trade-secret misappropriation, alleging that they were using its recipes. ECF No. 122 at 6. On January 26, 2023, MSHB entered into a settlement agreement with Tiwari, Panthi, and NBI (the "Settlement Agreement"). *Id.*; ECF No. 122-22 at 2. As part of the agreement, the parties released all claims that were or could have been asserted in the litigation and agreed not to file new suits regarding those claims. ECF No. 122 at 6; ECF No. 122-22 at 3–6. The Settlement Agreement also stated that Panthi, Tiwari, and NBI "denied using any of MSHB's . . . trade secrets or recipes and that" the Settlement Agreement did not constitute "a license or permission to use MSHB's trade secrets." ECF No. 122-22 at 6. The parties then dropped their claims, and the case went away. ECF No. 122 at 6.

The repose was short lived. Fast forward to May 2024, and MSHB and NBI are still competing in the marketplace of Indian cuisine. *Id.* at 7. Suspecting that Defendants were still using its recipes, MSHB hired an expert to test some dishes from Himalayan Taj and compare them to dishes from Noon Mirch. ECF No. 122 at 7; ECF No. 128 at 6. The expert created two reports. ECF No. 128 at 6. In the first

report, she ordered nine sauces and ran them "through a gas chromatograph and mass spectrometer to determine what spices and other ingredients they contained." *Id.* at 7; ECF No. 128-13. She then compared the results between Noon Mirch's and Himalayan Taj's sauces to determine their similarity. ECF No. 128 at 7; ECF No. 128-13 at 2–12.

In the second report, MSHB's expert compared three menu items from Himalayan Taj, Noon Mirch, and two other Indian-style restaurants. ECF No. 128 at 7; ECF No. 122-21. She sampled each dish and recorded her sensory impressions, including taste as well as visual presentation, culinary quality, texture, and mouthfeel. ECF No. 122-21 at 3.

Convinced Defendants were using its recipes, MSHB sent Defendants a letter on May 24, 2024, claiming they had breached the Settlement Agreement and demanding mediation. ECF No. 122 at 10; ECF No. 122-5. On that same day, MSHB filed its original complaint in this case. ECF No. 1. MSHB asserts claims for trade-secret misappropriation under the Defend Trade Secrets Act ("DTSA") and Texas Uniform Trade Secrets Act ("TUTSA") and claims for breach of contract under the Settlement Agreement. ECF No. 60 at 7–16. In response, Defendants filed an amended answer and raised several affirmative defenses. ECF No. 75.

MSHB now moves for partial summary judgment on the trade-secret-misappropriation and breach-of-contract claims, as well as Defendants' affirmative

defenses. ECF No. 122. Defendants cross-move for summary judgment on all claims. ECF No. 128.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cory v. Stewart*, 103 F.4th 1067, 1072–73 (5th Cir. 2024) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it could affect the suit's outcome under governing law." *Reynolds v. Kuraray Am., Inc.*, No. 4:22-CV-00182, 2026 WL 861071, at *2 (S.D. Tex. Mar. 30, 2026). "And '[a] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (internal quotation marks omitted) (alteration in original) (quoting *TIG Ins. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)). Conversely, "[t]here is no genuine issue for trial when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion' and identifying the record evidence that 'it believes demonstrate[s] the absence of a genuine issue of material fact.'" *Reynolds*,

2026 WL 861071, at *2 (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Id.* (alterations in original) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"'[O]nce a movant who does not have the burden of proof at trial makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that the motion should not be granted' by 'identify[ing] specific evidence in the record and articulat[ing] the precise manner in which that evidence supports her claim.'" *Associated Prof'l Educators of La. v. Edu20/20, L.L.C.*, No. 24-30640, 2026 WL 448019, at *8 (5th Cir. Feb. 18, 2026) (second and third alterations in original) (quoting *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016)). The district court does not "have a duty to sift through the record in search of evidence to support the nonmovant's opposition to summary judgment." *Id.* (internal quotation marks omitted) (quoting *Edwards*, 841 F.3d at 363).

Courts must "resolve factual controversies in favor of the nonmoving party" but need "not consider 'conclusional allegations and unsubstantiated assertions.'" *Cory*, 103 F.4th at 1073 n.8 (first quoting *Little*, 37 F.3d at 1075; and then quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011)).

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE MSHB CANNOT PROVE ITS TRADE-SECRET OR BREACH-OF-CONTRACT CLAIMS.

MSHB asserts two types of claims against Defendants: claims for trade-secret misappropriation under the DTSA and TUTSA, and claims for breach of contract under the Settlement Agreement. The trade-secret claims fail because MSHB has provided no evidence that its recipes are trade secrets or that Defendants actually used the recipes. The contract claims fail because there is no evidence that Defendants breached the Settlement Agreement.

### A. MSHB's Trade-Secret Claims Fail Because There Is No Evidence that MSHB's Recipes Are Trade Secrets or that Defendants Used the Recipes.

"Because the definitions of 'trade secret' in the DTSA and TUTSA are functionally identical, the Court considers them together for purposes of summary judgment." *Dulcich, Inc. v. DaPron*, No. 3:23-CV-00405, 2025 WL 2147068, at *4 (S.D. Tex. July 29, 2025) (quoting *Vest Safety Med. Servs., LLC v. Arbor Env'l, LLC*, No. 4:20-cv-0812, 2022 WL 2812195, at *6 (S.D. Tex. June 17, 2022)), *adopted*, No. 3:23-CV-405, 2025 WL 2337051 (S.D. Tex. Aug. 13, 2025). "To succeed on the merits of a . . . misappropriation claim, [MSHB] 'must show that (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) [Defendants] *used* the trade secret without authorization from [MSHB]." *Id.* (emphasis in original) (quoting *CAE*

*Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022)).

MSHB contends that Defendants violated DTSA and TUTSA by misappropriating its recipes. Defendants argue that MSHB's recipes do not constitute trade secrets and, even if they do, there is no evidence that Defendants used the recipes. The Court addresses each argument in turn.

***i. There is no evidence that MSHB's recipes are not generally known or readily ascertainable by others in the restaurant industry.***

MSHB argues that its recipes are trade secrets. Business information constitutes a trade secret if it is "subject to reasonable measures to maintain its secrecy, not generally known or readily ascertainable, and has independent economic value derived from its secrecy." *Associated Prof'l Educators*, 2026 WL 448019, at *7; 18 U.S.C. § 1839(3). To establish that information is not generally known, a "plaintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." *Irongate AI, LLC v. Houk*, No. MO:25-CV-00159-DC-RCG, 2025 WL 3113655, at *4 (W.D. Tex. Oct. 20, 2025) (quoting *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020)), *adopted*, No. MO:25-CV-00159-DC, 2025 WL 3113204 (W.D. Tex. Nov. 6, 2025). The description must "permit the defendant and the Court to 'ascertain at least the boundaries within which the secret lies.'" *Virun, Inc. v.*

*Cymbiotika, LLC*, No. 8:22-cv-00325-SSS-DFMx, 2023 WL 2372393, at *5 (C.D. Cal. Jan. 3, 2023). Courts "routinely dismiss[] trade secret claims where the allegations . . . fail to separate the alleged trade secret from public knowledge and, therefore, do not establish that the alleged trade secret was 'not generally known' or 'readily ascertainable by proper means.'" *ASG Chem. Holdings, LLC v. Bisley Int'l, LLC*, No. H-23-4333, 2024 WL 5036568, at *7 (S.D. Tex. Nov. 18, 2024) (quoting *Pie Dev., LLC v. Pie Ins. Holdings, Inc.*, No. 3:19-CV-792-HTW-LGI, 2021 WL 3206043, at *5 (S.D. Miss. July 21, 2021), *aff'd*, No. 21-60593, 2023 WL 2707184 (5th Cir. Mar. 30, 2023)), *adopted*, No. CV H-23-4333, 2024 WL 5108450 (S.D. Tex. Dec. 12, 2024).

Recipes can be trade secrets. *See, e.g.*, *Warman v. Local Yokels Fudge, LLC*, No. CV 19-1224, 2025 WL 1170667, at *3–6 (W.D. Pa. Apr. 22, 2025) (finding fudge recipe was a trade secret); *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 966 (N.D. Iowa 2006) (finding for purposes of preliminary injunction that ice cream sandwich wafer recipe and manufacturing process were trade secrets). To prove a recipe is a trade secret, a plaintiff must show that it is sufficiently unique or not generally known by others in the same industry. For example, in *Li v. Shuman*, the owner of an Asian American-style restaurant sued his former business partner for trade-secret misappropriation after the partner opened a competing restaurant. No. 5:14-CV-00030, 2016 WL 7217855, at *2–11 (W.D. Va. Dec. 9, 2016). The

owner claimed that he had "compiled a number of secret recipes in an Excel spreadsheet, prominently marked as 'confidential,'" and kept them in the kitchen "for use by the kitchen staff." *Id.* at *18. When their business relationship soured, the owner accused his partner of taking his recipes "by improper means, disclos[ing] them to his employees without . . . consent, and" serving the dishes at his own restaurant. *Id.*

To prove his recipes were trade secrets, the owner submitted the "16-page Excel spreadsheet" that listed several dishes "one might expect to find at an Asian-American restaurant," including "Fried Rice, Veggie Tempura, Shrimp with Lobster Sauce, Moo-Goo Gai Pan, Pad Thai Noodles, Spring Rolls, Confucious Duck, Green Curry Thai, Korean BBQ Beef, as well as sauces such as General Tso's, Sweet and Sour Sauce, Honey Ginger Sauce, and Kung Pao Sauce." *Id.* at *19. Although a few recipes had specific quantities, many "contain[ed] nothing more than a short list of ingredients without" measurements. *Id.* "[V]ery few include[d] actual cooking instructions," and the few instructions that did exist were "terse"—such as "'Vegetable oil sautéed fine garlic;' 'Drain water 1st;' 'Wait 3 minutes.'" *Id.*

Finding that the owner "offer[ed] no evidence establishing how his recipes are different from those generally known in the industry," the court concluded that he could not prove his recipes derived "independent economic value . . . from not being generally known." *Id.* at *20 (quoting VA. CODE ANN. § 59.1-336). Although the

owner "claim[ed] his dishes taste different than similar dishes at other restaurants," he "identifie[d] no explanation for that difference or 'secret ingredient' that makes his dishes unique." *Id.* He simply "point[ed] to nothing about his recipes or the ingredients that go into those recipes that gives him a competitive edge." *Id.*

The court also concluded the owner's "specific way of making each recipe" did not constitute a trade secret because "he [was] unable to articulate anything proprietary about that process." *Id.* The court noted that his "[g]eneral references to 'the process' and 'combination of different ingredients'" were "not specific enough to constitute a trade secret" without evidence "establish[ing] how he derive[d] economic value from th[e] process aside from generic knowledge of cooking . . . common Asian-American dishes and running an Asian restaurant." *Id.* Determining that "[t]here is simply no evidence that [the plaintiff's] recipes or cooking process are in any way unique or derive independent economic value from not being generally known to or readily ascertainable by others in the industry," the court granted summary judgment for the defendants. *Id.*

Here, MSHB tries to show its recipes are trade secrets by submitting: (i) a list of 115 recipe names, including 83 main dishes, 8 desserts, 18 cocktails, and 6 miscellaneous beverages, ECF No. 116 at 2–5; (ii) a chart that lists when the recipes were developed and by whom, *id.* at 6–7; (iii) a chart that groups menu items from Noon Mirch with similar menu items from Himalayan Taj, *id.* at 8–12;

(iv) several typed recipes that include ingredients, quantities, and cooking instructions, *id.* at 13–97; (v) pictures of handwritten recipes from a spiralbound notebook, ECF No. 117 at 98–151; (vi) a declaration from Madhu Nanda, SRS's and MSHB's former head chef, ECF No. 122-3; (vii) a declaration from Navul Nanda, Madhu Nanda's son and current "President, sole member, and sole owner . . . in MSHB," ECF No. 122-4 at 2; and (viii) the expert reports of Catherine Hutt, ECF Nos. 122-21, 128-13. None of this evidence, however, establishes that MSHB's recipes are unique or not generally known.

First, the list of recipe names and accompanying charts (i–iii) simply list names and dates. They do not identify what makes the recipes unique or how the recipes provide MSHB a competitive edge. *See UOP LLC v. Exterran Energy Sols.*, L.P., No. 4:21-CV-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021) (explaining that general lists "that only reveal the end results of" a trade secret are insufficient (quoting *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687, 2013 WL 9554563, at *5 (N.D. Tex. June 5, 2013))).

Next, MSHB's recipes are similarly unhelpful. The recipes include typical dishes one might expect to find at an Indian-style restaurant, including Aloo Gobi, Basmati Rice, Channa Masala, Chicken Biryani, Samosas, and Chicken Tikka Masala. ECF No. 117. Like the recipes in *Li*, which mostly contained short ingredient lists with a few terse instructions, MSHB's handwritten recipes mostly

contain short lists of ingredients—some with measurements, some without—and few actual cooking instructions. *Id.* at 98–151. The few instructions included are terse, such as "little bit water to make halwa," "garnish with cashews & almond," and "corn starch to thicken." *Id.* at 108, 110, 133. Notably, nothing in the handwritten recipes establishes how they are different from those used in other Indian restaurants. *Li*, 2016 WL 7217855, at *19-20.

MSHB's typed recipes are slightly more robust since they contain complete ingredient lists, quantities, and cooking instructions. ECF No. 116 at 13–97. Like the handwritten recipes, though, they do not identify any secret or rare ingredients, special timing or cooking processes, or proprietary spice mixes that make them unique or economically valuable. However, MSHB only began creating the typed recipes in summer 2020, ECF No. 122-3 at 17, and did not complete them until after September 2020—that is, after Tiwari and Panthi left Noon Mirch, ECF No. 122 at 14 n.8. MSHB never alleges that Defendants accessed or saw the typed recipes. Defendants claim they did not, ECF No. 128 at 10, and MSHB provides zero evidence to the contrary. Thus, the typed recipes cannot serve as the basis for MSHB's trade-secret claims. As for oral recipes, MSHB has produced no evidence to identify specific oral recipes as trade secrets or otherwise differentiate them from the written or typed recipes.

The declarations from Madhu and Navul Nanda also fail to advance MSHB's

cause. Madhu Nanda "served as SRS's head chef from 2003 through 2017 when it closed the Cuisine of India restaurant, and MSHB's head chef from 2017 through 2024 when [she] retired." ECF No. 122-3 at 2–3. In her declaration, she claims that each recipe "compris[es] a unique combination of ingredients and preparation methods." *Id.* at 3. Navul Nanda echoes that same sentiment in his declaration, asserting that "MSHB's Recipes are unique in their ingredients and methods of preparation for Indian and Indian-styled food," giving "MSHB a unique, competitive flavor advantage over its competitors." ECF No. 122-4 at 2. Yet, MSHB never substantiates these declarations. It never describes—much less establishes—any unique ingredients, ingredient combinations, or preparation methods. These "[g]eneral references to 'the process' and 'combination of different ingredients' are not specific enough to constitute a trade secret." *Li*, 2016 WL 7217855, at *20; *see Little Caesar Enters., Inc. v. Sioux Falls Pizza Co.*, No. CIV. 12-4111-KES, 2012 WL 3190788, at *5 (D.S.D. Aug. 3, 2012) ("General references to preparation, timing, and amounts of food per hour to minimize waste is not specific enough to constitute a trade secret and would not classify as being 'not generally known.'").

Last, and perhaps least, the expert reports. MSHB's expert, Catherine Hutt, created two reports. ECF No. 128 at 6. In the first report, she ordered nine sauces from Noon Mirch and Himalayan Taj and ran them "through a gas chromatograph and mass spectrometer to determine what spices and other ingredients they

contained." *Id.* at 7; ECF No. 128-13. She then compared the results between Noon Mirch's and Himalayan Taj's sauces to determine their similarity. ECF No. 128 at 7; ECF No. 128-13 at 2–12. Notably, nowhere in the first report does Hutt opine, or even mention, whether MSHB's (Noon Mirch's) recipes are unique or special compared to other recipes used in Indian cuisine more generally. The report indicates that the recipes for each of the nine sauces do not contain identical ingredients. ECF No. 128-13 at 4-6.

In the second report, Hutt compared three menu items from Himalayan Taj, Noon Mirch, and two other Indian-style restaurants.[4] ECF No. 128 at 7; ECF No. 122-21. She sampled each dish and recorded her sensory impressions, including taste as well as visual presentation, culinary quality, texture, and mouthfeel. ECF No. 122-21 at 3. In her summary of findings, Hutt opines that the "culinary quality for Noon Mirch and Himalayan Taj menu items," the "cooking procedures and quality of ingredients," and the "sensory character of their menu items" starkly contrasts with "similar items from" the two other Indian restaurants she sampled. ECF No. 122-21 at 3. She does not, however, identify any specific ingredients, ingredient combinations, cooking procedures, spice-mix ratios, etc. that make the

[4] The Court recognizes that Defendants object to Hutt's second, sensory report under Federal Rule of Evidence 702. ECF No. 129 at 15–16. Since the second report does not change the Court's summary judgment analysis, the Court overrules Defendants' objection. For the same reason, the Court overrules Defendants' objections to MSHB's motion-for-summary-judgment exhibits, ECF No. 129 at 9–10, and MSHB's objections to Defendants' exhibits, ECF No. 132 at 1–2. The Court makes no finding as to the report's or exhibits' admissibility.

recipes unique. Nor does she opine that MSHB's *recipes* are unique or not generally known by others in the Indian-restaurant industry more broadly. In short, Hutt's reports do nothing to help explain why MSHB's recipes are trade secrets.

In sum, the Court is left to glean what makes MSHB's recipes unique or secret based on little more than a bunch of recipes or ingredient lists for common Indian-style dishes. Yet, MSHB offers "no evidence establishing how [these] recipes are different from those generally known in the industry." *Li*, 2016 WL 7217855, at *20. Like the restaurant owner in *Li*, MSHB points to nothing about its recipes that makes them unique or gives MSHB a competitive edge.

Realizing it cannot muster sufficient affirmative evidence to support its claims, MSHB attempts to rely on a negative inference, arguing that Defendants have "produced no evidence that any of [MSHB's] Recipes is known in the public at all." ECF No. 122 at 14. However, MSHB confuses the burden of proof. Defendants need not prove MSHB's recipes are publicly known. Instead, MSHB must prove that its recipes are *not* publicly known. *Associated Prof'l Educators*, 2026 WL 448019, at *7.

On this factual record, MSHB cannot meet its burden of establishing that its recipes or preparation methods are entitled to trade-secret protection. The Nandas' conclusory, unsubstantiated assertions that the recipes are unique do not carry the day. There is simply no evidence that MSHB's recipes or preparation methods are

in any way unique or that MSHB derives independent economic value from them aside from generic knowledge of cooking common Indian-style dishes and running an Indian restaurant. *See Li*, 2016 WL 7217855, at *20; *Virun*, 2023 WL 2372393, at *5 (concluding plaintiff "does not usefully identify what the 'techniques' used to create [its] Product are, or what distinguishes them from ordinary technologies"); *Buffets, Inc. v. Klinke*, 73 F.3d 965, 968–69 (9th Cir. 1996) (upholding district court's determination that chain restaurant's recipes lacked requisite novelty and economic value to be entitled to trade secret protection under Washington law, finding the recipes "were for such American staples as BBQ chicken and macaroni and cheese and the procedures, while detailed, are undeniably obvious"); *Vraiment Hosp., LLC v. Binkowski*, No. 8:11-CV-1240-T-33TGW, 2012 WL 1493737, at *13–14 (M.D. Fla. Mar. 19, 2012) (rejecting argument that salted caramel brownie recipe is a trade secret where the "one key secret ingredient" that gave brownie its "unique taste" was included in a brownie recipe available on www.epicurious.com), *adopted*, No. 8:11-CV-1240-T-33TGW, 2012 WL 1470309 (M.D. Fla. Apr. 27, 2012).

Since MSHB cannot establish a trade secret exists, Defendants are entitled to summary judgment on MSHB's trade-secret claims. *See Su v. Gaya Won, LLC*, No. H-23-3215, 2024 WL 5301787, at *9 (S.D. Tex. Dec. 23, 2024) (holding misappropriation claim failed because the party provided no "evidence of a trade

secret under DTSA or TUTSA"), *adopted*, No. H-23-3215, 2025 WL 50261 (S.D. Tex. Jan. 7, 2025).

***ii. There is no evidence that Defendants used MSHB's recipes.***

In addition, MSHB's trade-secret claims fail because there is no evidence that Defendants used the recipes. "A cause of action for misappropriation of trade secrets accrues when the trade secret is *actually used*." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325–26 (5th Cir. 2018) (emphasis in original) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007)). Generally, "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Id.* at 526 (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013)). "[R]elying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret" constitute actual "use." *Atlus Grp. US, Inc. v. Cole.*, No. 3:25-CV-1361-B, 2026 WL 673587, at *8 (N.D. Tex. Mar. 10, 2026) (quoting *Wellogix*, 716 F.3d at 877). "[P]roof of trade secret misappropriation often depends upon circumstantial evidence." *GE Betz*, 885 F.3d at 526 (quoting *Sw. Energy Prod. Co. v. Berry-Helfand*, 411 S.W.3d 581, 598 (Tex. App.—Tyler 2013) *rev'd on other grounds*, 491 S.W.3d 699 (Tex. 2016)).

To prove use, a plaintiff must show the defendant did more than just misappropriate a trade secret and thereafter successfully compete against the

plaintiff. For example, in *GE Betz, Inc. v. Moffitt-Johnston*, an executive resigned from GE to join a competitor. 885 F.3d at 322. Days before announcing her resignation, the executive downloaded over 27,000 files that contained GE's client information to an external hard drive. *Id.* at 322–23. She also emailed herself GE's most recent financial data. *Id.* at 326. Within a year of leaving, the competitor had acquired several GE customers. *Id.* The district court granted summary judgment for defendants, and GE appealed. *Id.* at 325.

The Fifth Circuit affirmed summary judgment, holding that GE had failed to produce sufficient evidence to prove actual use. *Id.* at 326. The court explained that the mere fact the executive downloaded tens of thousands of files and emailed herself financial data may have demonstrated improper acquisition but was insufficient to establish use. *Id.* at 327. Inferring use based on that circumstantial evidence would "collapse the improper-acquisition prong and the use prong of the misappropriation of trade secrets cause of action." *Id.* The court also found that it would be "unreasonable to infer" that the defendants "used GE's trade secrets" simply because the competitor successfully poached several of GE's customers, emphasizing that the defendants' "ability to compete does not itself suggest that [they] did so by misappropriating trade secrets." *Id.* at 326; *see also CAE Integrated*, 44 F.4th at 263 ("[The plaintiff] contends that [the defendant] could never have succeeded without [the plaintiff's] data, claiming that the 'use' of this data can reasonably be inferred

from [the defendant's] results. This inference is insufficient to support a finding that [the defendant] used [the plaintiff's] trade secrets." (cleaned up)); *Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 666–70 (E.D. Tex. 2024) (concluding circumstantial evidence that former employee accessed client lists shortly before joining competitor, "accessed tools that would allow her to transmit the lists," and "successfully acquired many of [the plaintiff's] customers" was "insufficient to establish that Defendants actually used the customer lists").

Like the plaintiff in *GE Betz*, MSHB has no direct evidence that Defendants used (or continue to use) its recipes. Instead, it relies on circumstantial evidence. Specifically, MSHB relies on the fact that (1) Tiwari had access to its recipes while he worked for Cuisine of India and Noon Mirch as a chef, (2) Tiwari left to work as a chef at Himalayan Taj, (3) Himalayan Taj and Noon Mirch serve food that tastes similar, and (4) Defendants have not identified "any independent or public-source basis for their substantially similar recipes." ECF No. 122 at 22. Based on this sparse evidence, MSHB urges the Court to find that Defendants used its recipes to "assist or accelerate research or development of NBI's recipes." ECF No. 122 at 22. In essence, MSHB asks the Court to draw the same inferences that the Fifth Circuit rejected in *GE Betz*.

The Court declines to do so. Unlike in *GE Betz*, where there was proof that the executive downloaded trade-secret information and files, there is no proof that

Tiwari viewed—much less downloaded—MSHB's typed recipes or copied its handwritten recipes before he left to join NBI. To the contrary, Plaintiff's own expert's report indicates that the nine sauces from each restaurant do not contain identical ingredients, tending to show that Defendants did not copy MSHB's recipes. ECF No. 128-13 at 4–6. Moreover, MSHB cites nothing to demonstrate that Himalayan Taj or NBI have poached its customers since Tiwari and Panthi left. Regardless, Defendants' ability to compete with MSHB does not itself suggest they are using MSHB's recipes. *GE Betz*, 885 F.3d at 326. Put simply, the evidence of "use" here is even less compelling than the evidence in *GE Betz*, which the Fifth Circuit found insufficient to survive summary judgment.

Trying to resist this conclusion, MSHB cites *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586, 601 (5th Cir. 2015), to argue that the Court can infer actual use based on Tiwari's knowledge of the recipes, the similarities between Himalayan Taj's and Noon Mirch's menus and food, and the "rapid development" of Himalayan Taj's menu after Tiwari left. ECF No. 132 at 9–10. In *Spear Marketing*, however, the Fifth Circuit noted that the plaintiff had "point[ed] to no similarity" between the trade secrets at issue, holding that "coincidence of timing" and "the mere fact that two [competing] products occupy the same commercial niche" do not establish "substantial similarity." *Spear Mktg.*, 791 F.3d at 601–02. So too here: the timing of Tiwari's departure and the mere fact that Himalayan Taj

serves dishes that occupy the same commercial niche of Indian-style cuisine does not establish substantial similarity. Again, Plaintiff's own expert report containing the breakdown of volatile composition tends to show the opposite—that the products do not share the same formulation, recipe, or manufacturing process—meaning no substantial similarity of the products. ECF No. 128-13 at 4–6.

Accordingly, the Court finds that MSHB cannot meet its burden to establish that Defendants used its recipes. Because use is an essential element under the DTSA and TUTSA, Defendants are entitled to summary judgment on MSHB's trade-secret-misappropriation claims on this basis as well.

**B. MSHB's Contract Claims Fail Because Defendants Did Not Breach the Settlement Agreement.**

The Court now turns to MSHB's two breach-of-contract claims. Both fail.

First, MSHB argues that the Settlement Agreement obligates Defendants to refrain from using MSHB's trade secrets going forward and that Defendants breached that obligation when they continued to serve food derived from its recipes. ECF No. 122 at 14–17. For their part, Defendants contend the Settlement Agreement does not obligate them to refrain from using MSHB's trade secrets and, even if it did, the MSHB cannot establish that Defendants used its trade secrets. ECF No. 129 at 17–19. Defendants are correct.

Texas law governs the Settlement Agreement. ECF No. 122-22 at 7 ("This Agreement shall be governed and interpreted under the laws of the State of Texas.").

When interpreting a contract, courts begin with the express language, giving "terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Marathon Oil Co. v. Koch Energy Servs., LLC*, No. 4:21-CV-1262, 2023 WL 4032879, at *4 (S.D. Tex. May 8, 2023) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)), *adopted*, No. 4:21CV1262, 2023 WL 4033332 (S.D. Tex. June 15, 2023). "If a contract can be given a 'certain or definite legal meaning or interpretation,' then it is unambiguous, and may be interpreted as a matter of law." *Id.* at *5 (quoting *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019)). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (cleaned up) (quoting *Pathfinder Oil*, 574 S.W.3d at 889).

Here, the Settlement Agreement states that "Panthi and Tiwari and N[BI] have denied using any of MSHB's or Nanda's *trade secrets or recipes* and that nothing in this Settlement Agreement is to be construed as a license or permission to use MSHB's *trade secrets*." ECF No. 122-22 at 6 (emphasis added). Even assuming the second half of this sentence does impose an affirmative obligation on Defendants, it only requires them to refrain from using MSHB's trade secrets; it says nothing about recipes. This was no mere mistake either, since the parties included the word

"recipes" in the directly preceding clause. They could have repeated the same "trade secrets or recipes" language but chose not to, indicating an intentional omission. *See Equistar Chems. L.P. v. Indeck Power Equip. Co.*, No. 4:18-CV-4349, 2020 WL 4746469, at *14 (S.D. Tex. Aug. 17, 2020) (explaining that the presumption of consistent usage provides that "a material variation in terms suggests a variation in meaning" (quoting *Cadence Bank v. Elizondo*, 606 S.W.3d 802, 818 (Tex. App.—Houston [1st Dist.] 2020), *rev'd sub nom. Cadence Bank, N.A. v. Elizondo*, 642 S.W.3d 530 (Tex. 2022))).

Accordingly, MSHB can only succeed on its breach-of-contract claim if it proves that Defendants used its trade secrets. MSHB cannot meet this burden by simply showing that Defendants used its recipes because, for the reasons explained above, MSHB cannot establish that its recipes are trade secrets. Beyond that, MSHB adduces no other evidence that Defendants used its trade secrets. Thus, MSHB necessarily cannot prove Defendants breached the "no-license" provision of the Settlement Agreement.

Second, MSHB argues that Defendants breached the Settlement Agreement by refusing to engage in pre-litigation mediation. ECF No. 122 at 17. Defendants maintain that MSHB breached this provision, not them. ECF No. 129 at 20. Again, Defendants are correct.

The Settlement Agreement provides that "[a]ny dispute between the Parties

arising out of or in any way related to this Agreement shall first be resolved by mediation and only if mediation is unsuccessful shall the Parties . . . proceed to seek redress before a court." ECF No. 122-22 at 7. MSHB sent Defendants a letter on May 24, 2024, claiming that they had breached the Settlement Agreement and demanding mediation, ECF No. 122 at 10; ECF No. 122-5, and then filed its original complaint *on that same day*, ECF No. 1, before Defendants even had a chance to respond. In other words, MSHB breached the Settlement Agreement—not Defendants—by filing this case before attempting mediation. Needless to say, no reasonable jury could find that Defendants breached the mediation provision.

Accordingly, the Court concludes that Defendants are entitled to summary judgment on MSHB's contract claims.

## IV. DEFENDANTS' CLAIM FOR ATTORNEY FEES ARE NOT APPROPRIATE AT THIS STAGE.

If the Court finds summary judgment appropriate for Defendants—as the Court does—Defendants request an award for attorney fees. ECF No. 128 at 20. "Under both DTSA and TUTSA, a defendant can obtain attorneys' fees sanctions only if they are the prevailing party and if the underlying claim was made in 'bad faith.'" *Universal Plant Servs., LLC v. Meier*, No. 4:22-CV-2364, 2025 WL 3500634, at *16 (S.D. Tex. Aug. 19, 2025) (quoting 18 U.S.C. 1836(b)(3)(D)), *adopted sub nom. Universal Plant Servs., LLC v. Adams*, No. CV H-22-2364, 2025 WL 3500631 (S.D. Tex. Sept. 19, 2025); 18 U.S.C. § 1836(b)(3)(D); TEX. CIV.

PRAC. & REM. CODE § 134A.005. In determining whether the underlying claim was made in bad faith, "court asks whether (1) the claim was entirely baseless or specious, and (2) the claim was taken in subjective bad faith or for other improper purposes." *Universal Plant*, 2025 WL 3500634, at *16.

Here, Defendants argue that MSHB's claims were objectively baseless and pursued for the improper purpose of stifling competition. ECF No. 128 at 20–23. MSHB responds that its claims were not baseless and that it did not sue Defendants for an improper purpose. ECF No. 132 at 13. Both cite to various pieces of evidence—or lack of evidence—to support their positions.

Defendants and MSHB, however, jump the gun. The parties assume that attorney fee claims under the DTSA and TUTSA are counterclaims—i.e., must be proven at trial. They are not. In fact, most district courts "that have addressed this issue have determined that claims for attorney's fees under DTSA are not independent causes of action and instead must be pursued through a motion" under Rule 54(d). *DFW Dance Floors, LLC v. Suchil*, No. 3:22-CV-01775-N, 2025 WL 2076641, at *11 (N.D. Tex. July 22, 2025); *N.J. Deer Control, LLC v. En Garde Deer Def., LLC*, No. CV 24-5587 (MAS) (RLS), 2025 WL 216318, at *3–4 (D.N.J. Jan. 16, 2025) (collecting cases); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-CV-06012-SI, 2024 WL 4627049, at *2–3 (N.D. Cal. Oct. 8, 2024) (collecting cases).

This makes sense for two reasons. "First, the language of DTSA 'cabins attorney's fees as a remedy for the prevailing party, instead of creating an independent cause of action.'" *DFW Dance*, 2025 WL 2076641, at *12 (quoting *Beijing Meishe*, 2024 WL 4627049, at *3); *see also Jane St. Grp., LLC v. Millennium Mgmt. LLC*, No. 24 CIV. 2783 (PAE), 2024 WL 3460987, at *3 (S.D.N.Y. July 18, 2024) ("By including the fee-shifting provision in the 'Remedies' subsection, Congress evidently intended it to be a potential form of relief, not an independent basis for a claim. This is reinforced by the language of § 1836(b)(3)(D) itself . . . .").

Second, Rule 54(d) requires a "claim for attorney's fees . . . [to] be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages," and the motion must be made "after the entry of [final] judgment." FED. R. CIV. P. 54(d)(2)(A), (B)(i). Since the "DTSA does not require that attorney's fees be proved at trial as an element of damages," Rule 54(d) applies. *DFW Dance*, 2025 WL 2076641, at *12; *see also Chags Health Info. Tech., LLC v. RR Info. Techs., Inc.*, No. 4:21-CV-268-SDJ, 2023 WL 7414106, at *1 (E.D. Tex. Nov. 9, 2023) (ruling on defendants' Rule 54(d) motion for attorney fees under the TUTSA); *CAE Integrated, LLC v. Moov Techs. Inc.*, No. 1:21-CV-377-RP, 2023 WL 3959397, at *1–3 (W.D. Tex. June 12, 2023) (considering Rule 54(d) motions for attorney fees under both the DTSA and TUTSA).

Thus, the Court finds that claims for attorney fees are not appropriate at this

stage. If Defendants wish to request attorney fees under the DTSA and TUTSA, they may file a Rule 54(d) motion after the Court enters a final judgment on the merits.

## V. CONCLUSION

Accordingly, the Court **RECOMMENDS** MSHB's motion for partial summary judgment, ECF No. 122, be **DENIED** and Defendants' motion for summary judgment, ECF No. 128, be **GRANTED**.

Finding summary judgment appropriate, the Court further **ORDERS** that MSHB's motions to strike or exclude Defendants' experts, ECF Nos. 130 and 131, are **DENIED** as moot.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

**IT IS SO ORDERED.**

Signed at Houston, Texas, on August 8, 2026.

Dena Palermo

**Dena Hanovice Palermo**
**United States Magistrate Judge**